## ATLANTA CONSOLIDATED STREET RY. CO. v. BATES.

103  333
|116  745,
|103  333
|e125 518

1. The relation of common carrier and passenger exists between a street-railroad company and a passenger until he has reached his destination and has had a reasonable opportunity to alight safely from the car; and the carrier during this period is bound to extraordinary diligence on behalf of itself and its agents to protect the life and person of the passenger.

2. This doctrine of extraordinary diligence is not only applicable to the agents of the carrier on the car on which the passenger is traveling, but also to its agents having control of another car approaching on a parallel track after the latter have discovered that the former car was about to stop for the purpose of discharging passengers who might alight dangerously near such parallel track. It was, therefore, not error for the judge in his charge to the jury to apply this rule in the present case.

3. A harmless answer to an illegal question is not ground for a new trial.

4. For the judge to instruct the jury in his charge that he permitted such a question and answer for a certain purpose, without intimating what had or had not been testified to or proved upon the subject, is not reversible error.

5. In an action for damages for injuries to the person, where it is claimed by the plaintiff that his capacity to earn money has been diminished one half, it is not error for the court to admit testimony as to the value of plaintiff's services before the injury, in the particular occupation he was then following.

6. The habit or practice of the plaintiff in departing from cars on other occasions, either before or after the injury complained of, is not admissible testimony for the purpose of illustrating his conduct at the particular time under investigation.

7. Where it was alleged by the plaintiff in his petition that "the defendant, well knowing that it was dangerous to allow passengers to alight from a car on the side next to that from which another car was approaching, nevertheless took no steps to prevent passengers from alighting," it was not error to admit testimony showing that the defendant had placed no ropes, guards, or other protection to prevent passengers from alighting on that side of its car next to said parallel track; the question as to whether such omission amounted to negligence being left entirely to the jury.

8. A rule of the defendant company requiring its motormen to keep their cars under full control on approaching all street-crossings, and when there is a car standing at a crossing taking on or letting off passengers, or if they see that they are about to meet a car on a street-crossing, to slow up and see that the track is clear before attempting to pass, was admissible

in evidence as tending to show that the company regarded such a point on its line, when being approached by one of its cars, as more or less dangerous to passengers and others.

9. Where it appeared from the testimony that the hearing of the plaintiff was impaired, and it was inferable that for this reason he did not hear the approaching car that struck him, it was not error for the court to charge the jury that "the fact that he was partially deaf, if such was the fact, would not affect or lessen the degree of care required of him, that care being the degree of care which every prudent man would exercise under the same or similar circumstances."

10. The charge of the court, construed in its entirety, fairly laid before the jury the contentions of the parties as presented by the pleadings and the evidence; and there was no material error in any of the rulings of the court complained of in the grounds of the motion for new trial not covered by the preceding notes.

11. The question of diligence and negligence in such cases being peculiarly for the jury to determine, and the verdict being not without evidence to support it, this court will not overrule the discretion of the trial judge in refusing to grant a new trial.

Argued December 14, 1897.—Decided January 21, 1898.

Action for damages. Before Judge Reid. City court of Atlanta. January term, 1897.

Bates sued the railway company for damages from personal injuries alleged to have been caused by his being knocked down by one of its cars, as he stepped from the rear platform of another of its cars, upon which he was a passenger and which had stopped for the purpose of letting him off, the car that struck him being upon a parallel track and approaching from an opposite direction. He alleged that the defendant was guilty of negligence in each of the following particulars: The car that ran upon him was running at a reckless and unusual rate of speed. The employees upon it were guilty of negligence in not stopping it when they saw that the other car had stopped to let off passengers. It was not provided with a proper brake-chain, so as to enable it to be checked up with sufficient quickness. The conductor of the car upon which the plaintiff was knew of the danger to which the plaintiff was exposed, and nevertheless allowed the plaintiff, who was ignorant of the danger and could not perceive it, to alight from the car and be injured. The defendant, knowing that it was dangerous to allow passengers to alight from a car on the

side next to that from which another car was approaching, took no steps to prevent them from alighting; and by customarily allowing it done, without warning the passengers of the danger, impliedly invited them so to do. When the motorman or conductor, or both, of the advancing car that struck plaintiff, saw that the other car had stopped for the purpose of letting off a passenger, and when they saw, or ought to have seen, the plaintiff in said place of danger, the advancing car should have been checked up and gotten under control, so that, even though it had not stopped, it would have advanced slowly and in such manner that the plaintiff could have gotten out of the way; but such was not done. The motorman and conductor, one or both, in charge of the advancing car were guilty of gross negligence in continuing to go forward at a reckless rate of speed, in striking and running over plaintiff under the circumstances before detailed, and after becoming aware of plaintiff's danger, who was not aware of the danger and was himself without fault.

The plaintiff obtained a verdict for $1,000. The defendant's motion for a new trial was overruled, and it excepted. The motion was upon the following grounds:

1–3. Verdict contrary to law and evidence.

4. While Dr. Hagan was being examined in behalf of the plaintiff, and after he had stated the effects of plaintiff's fall, as set forth in the declaration, he was asked by plaintiff's counsel: "What effect would the injuries that you have described as suffered by Mr. Bates have on his system, as to the probable duration of his life?" This was objected to, because there was no allegation in the pleadings as to any shortening of his life, nor had it been averred that the pain described would shorten a man's life, and if so, how much. The court allowed the witness to answer: "It is a pretty difficult question for me to answer. There is certainly a very positive probability of any very severe blow or shock being potent in producing remote causes that would shorten life; how far it would influence life in this case I am not prepared to say."

5. While the plaintiff was being examined by his counsel he was asked: "In the condition you were in, with your arm

crippled partly by a wound received in battle, and your impaired hearing which had been going on for about a year (I believe you stated), at the date of your injuries, what were your services as a banker on a salary fairly worth?" This was objected to, as being merely speculative, and because there was no averment to recover any salary of any sort. The objection was overruled; and plaintiff testified that his salary varied, but that it would be fairly worth $3,000 a year.

6. Pending the cross-examination of Ernest Woodruff, the vice-president of defendant, counsel for plaintiff asked him: "Isn't it true that Mr. Kitchens [the motorman in charge of the car that struck plaintiff] was at that time more or less addicted to intemperance?" This was objected to, because there was no charge of his drinking, and defendant was not put on notice to sustain his character. The court allowed the question, and the witness answered negatively. Counsel for plaintiff asked, if it were not true that a very few weeks after this accident the attention of the witness was called by Allen Bates (son of the plaintiff), going out on the car towards Inman Park, to the fact that Kitchens, handling the motor, was evidently under the influence of liquor. This was objected to as irrelevant, and the court disallowed it, saying: "The only way that the habit of a man drinking liquor, in this suit, could be admissible, would be to illustrate the question as to whether the speed was reckless at the time of the accident." It was error to allow this matter introduced before the jury, because it tended to give a reason for reckless running that was not in the declaration, and of which no notice had been given to the defendant, and which was not applicable to the time of the running.

7. During the cross-examination of plaintiff, the following questions were put, and the following answers made: "Q. You frequently get off cars on first one side and then the other? A. Yes. Q. When they are moving and when they are standing still? A. Not when they are moving. Q. You never get off when they are moving? A. Oh, yes, when they are slow. Q. You sometimes get off under the ropes? A. When they are slowing up. Q. They can't keep you from getting off on that side when they are roped? A. Yes, I do get off of them

when they are standing still. Q. You have gotten off under the ropes, and gotten off the cars while they were moving? A. Yes." This testimony was objected to by plaintiff's counsel as irrelevant. Defendant's counsel replied: "We are showing, if we can, that he was a man that persisted in getting off the way that suited him." The court said: "I think anything he did is admissible to show what he can do, and for that purpose only." It is alleged that the court erred in so restricting this evidence, and that it was admissible for the purpose of showing that the plaintiff was a man who persisted in getting off the cars in the way that suited him.

8. In the cross-examination of Robinson, a witness for defendant, he was asked: "How long was it after this accident that the method was changed so that cars running across the street and stopping on the far side stop now on the near side?" This was objected to as immaterial, but the objection was overruled, and the witness was allowed to answer that he did not think it was a very short time, but that it was quite a while after the accident. It is alleged that this was introducing into the case a matter wholly immaterial, which tended to prejudice the defendant before the jury. In a note to this ground the court states: After plaintiff's counsel had finished the cross-examination of the witness and discharged him from the stand, defendant's counsel, resuming the direct examination, inquired of the witness which was the proper side of the street for the car to stop on. The witness answered that at the time of the accident the car was required to stop on the far side, but that the rule was changed afterwards. Witness being then turned over to plaintiff's counsel for recrossing, the question was asked and the objection made as complained of in this ground, and witness answered he did not know.

9. In the same cross-examination occurred the following: Q. "Do you use ropes now on open cars on double tracks,— ropes on the side next to the double tracks?" A. "Yes." Q. "Was there any guard on your car?" A. "No." Q. "Isn't it true that they do use them on many of the cars?" Counsel for the defendant objected to these questions as irrelevant, and because there was no allegation that the railroad company

should have guards; saying that the street-car company is not bound to get every appliance that may come out. The court held that he would let the evidence in, to illustrate the question about its being a dangerous place.

10. The court charged the jury: "Some evidence was admitted referring to the question of the plaintiff's getting on and off cars since the time of the alleged injury. This evidence was submitted to you for your consideration in connection with the proposition as to the extent of Mr. Bates's injury. You of course are to determine whether it illustrates that question or not, and if so, to what extent. It is not to be considered by you as to whether at the time of the alleged injury Mr. Bates was then in the exercise of ordinary care or not." The evidence referred is that quoted in ground 7. The charge was error in so restricting the use of this evidence.

11. The court charged: "There were some questions and answers permitted as to whether or not one of the agents of the defendant company drank liquor, or was a drinking man. There is no charge in the declaration that the defendant had in its employment an improper and a negligent servant, and this evidence is to be considered by you only to illustrate the question, if it does illustrate, and to what extent, the manner of running the car in charge of that agent, and with reference only to the specifications of negligence stated in the petition, to which I have called your attention." The testimony on this subject was only as quoted in ground 6. This charge was error because it was hypothetical. There was no evidence that one of the agents of the company drank liquor, or was a drinking man. The jury had no right to consider anything to illustrate the question of the manner of running the cars in charge of that agent, which had not been charged and specified in the declaration.

12. The court admitted in evidence the following parts of rule 38, as shown by the rule-book of the defendant, produced under notice: "Caution. Motormen shall run their cars at a moderate speed over all curves, switches, turnouts, railroad-crossings, and on down-grades, whether behind time or not. You must keep your car under full control on approaching all

street-crossings, and when there is a car standing at a crossing taking on or letting off passengers; or if you see that you are about to meet a car on a street-crossing, you must slow up and see that the track is clear before attempting to pass." Defendant objected to this evidence, on the grounds that it was irrelevant, and was a private rule made by the company for the guidance and instruction of its servants and employees; that a failure to observe such rule was not negligence as to third persons; and that there was no evidence that plaintiff knew of such rule, or that its existence in any way regulated his conduct on the occasion.

13. The court charged: "On the question of the ordinary care required of the plaintiff himself to avoid the consequences to himself of defendant's negligence, if such is shown, the fact that he was partially deaf, if such was the fact, would not affect or lessen the degree of care required of him, that care being the degree of care which every prudent man would exercise under the same or similar circumstances." This was error, because it left the jury to infer that although they might believe from the evidence that the plaintiff was deaf, he was still required to use no more care than the ordinarily prudent man who could hear.

14. The court charged: "The plaintiff contends that on that occasion he did all that in the exercise of ordinary care he should have done, and he claims that his observation of the defendant in letting off passengers under similar circumstances led him to act as he did, and not to anticipate danger in getting off the car; that his attention for the moment was withdrawn by the rain, and in raising or preparing to raise his umbrella; and that in all of these facts, if they appear from the evidence, and all the surrounding circumstances, he was not negligent, but exercised all the care that the law required of him,—exercised ordinary care. To determine the truth of this issue you will examine all of the evidence and facts of the case that will illustrate the question, and find the truth; the rule of law being, the precise thing which every prudent person who is a passenger is bound to do before stepping from an electric street-railroad car in a city at a street-crossing, when the car has

stopped to let him off, on the side next a parallel track, as near the track on which the stopped car is standing as the evidence may show in the case, is that which every prudent man who is a passenger would do under like circumstances. If prudent men who were passengers would look and listen, so must every one else who is a passenger, or take the consequences, so far as the consequences might have been avoided by that means." This charge was error, because it undertook to recite what had been testified to by the plaintiff, and stated a contention on his part not warranted by the testimony. He did not testify or contend that his attention for the moment was withdrawn, by the rain, from the car. Said charge practically stated that if the jury found from the evidence the contentions to be as stated in the charge, then the plaintiff had exercised ordinary care. There was no evidence going to show that the car had stopped for the purpose of allowing the passengers to alight on the side next to the parallel track. The charge stated that the plaintiff was bound to exercise only the ordinary care of passengers; which would leave the jury to understand that there was a different degree of diligence required of passengers from that required of other persons, which was misleading, as plaintiff was bound to exercise the care of ordinarily prudent persons, whether he was a passenger or a pedestrian on the street, and the law applicable to the one is applicable to the other. The court ought not to have told the jury what prudent persons are bound to do, but should have charged in the language as requested by defendant's counsel, as follows: "The precise thing which every man is bound to do before stepping upon a railroad-track is that which every prudent man would do under like circumstances. If prudent men would look and listen, so must every one else, or take the consequences, so far as the consequences might have been avoided by that means."

15. The court charged: "If you believe from the evidence that on or about August 6, 1894, at the place alleged in this suit, the plaintiff was a passenger on one of the defendant's electric cars, and that as the plaintiff was in the act of alighting from the car and just before he had safely landed, another

car of the defendant approached from the opposite direction, running at a reckless and unusual rate of speed, struck and injured plaintiff; and if you believe such running of said car was negligent, that is, the absence of extraordinary diligence, and that such negligence, if you find it to be negligence, caused plaintiff's injury, and that by ordinary care plaintiff could not have avoided the consequences to himself of defendant's negligence,—if you find that to have existed as explained, the plaintiff would be entitled to recover." This was error, because the servants in charge of the car that struck the plaintiff were not bound to use extraordinary diligence towards a person undertaking to cross over the track in front of the car, because the defendant owed to the plaintiff only ordinary care by its agents in charge of the car, and such care as it owed to other people undertaking to cross the tracks at said crossing; and because said charge practically stated to the jury that the plaintiff had not left the car but was in the act of leaving it, whereas the evidence shows that the plaintiff had left the car and had ceased to be a passenger; and because the declaration did not aver that the plaintiff at the time he was struck was attempting to leave the car, but that he had stepped off of the car on which he had been a passenger.

16. The court charged: "If you believe from the evidence that at the place alleged, and at the time, the plaintiff was a passenger on defendant's electric car, and that as the plaintiff was in the act of alighting from the car, and before he had safely landed, the employees on the car, which it is claimed struck plaintiff, saw that the car on which plaintiff is claimed to have been riding had stopped to let off a passenger, if you believe they did see and know that the car had stopped for that purpose, or could in the exercise of extraordinary diligence have so seen and known, and failed to stop the car which is claimed to have struck plaintiff, or check up and get the same well under control, and if you believe that in the exercise of extraordinary diligence they could have stopped said car or checked up and got the same well under control, and that in the exercise of such diligence they ought to have done so, and their failure to do so, if there was such a failure, was slight

negligence, and if you believe that such negligence, if you find it to have existed, caused plaintiff's injury, and that by ordinary care plaintiff could not have avoided the consequences to himself of defendant's negligence, if shown, the plaintiff would be entitled to recover." This was error, because it required the agents in charge of the car that struck plaintiff to use extraordinary diligence; and because it practically stated what would be negligence, in that it practically told the jury that if the motorman in charge of the car had not observed the rule introduced in evidence, that is, to stop the car or check up and get the same well under control, this would be a want of extraordinary diligence, and slight neglect, and would authorize a recovery by plaintiff.

17. The court charged: "If you believe from the evidence that the plaintiff was a passenger, as claimed, and was about to alight at the time and place he claims, and had not safely alighted, and that the conductor of the car, upon which plaintiff is claimed to have been riding, saw and knew that plaintiff was exposed to danger in alighting from the car, which danger plaintiff was ignorant of, and could not, in the exercise of ordinary care, perceive, and nevertheless allowed plaintiff to alight and be injured; and if you believe that in so doing, if he did, the conductor was guilty of negligence, that is, failed in the exercise of extraordinary diligence, and that such negligence, if there was such negligence, caused plaintiff's injury, and that plaintiff could not by ordinary care have avoided the consequences to himself of defendant's negligence, if shown, the plaintiff would be entitled to recover." This was error, because it stated to the jury that the conductor ought not to have allowed the plaintiff to alight from the car, and put upon the defendant the responsibility of using all possible diligence to prevent the injury, which is a higher degree of diligence than the law requires; for the agents of the defendant were only required to use extraordinary diligence as defined by the law, and were not required at all hazards to prevent him from doing what he pleased. The court should have left it to the jury to say whether or not the conductor did all he was required to do, if the jury believed he warned the plaintiff not to get off when and where he did.

18. The court charged: "If you believe from the evidence that the plaintiff was a passenger, as. claimed, at the time and place, and was about to alight as claimed, and had not safely alighted from the car, and if you believe from the evidence that it was dangerous, and that defendant knew it or ought to have known it in the exercise of extraordinary diligence, to allow a passenger to alight on the side of the car next a parallel track, and took no steps to prevent it; and if you believe that that was negligence, that is, the failure to exercise extraordinary diligence, and thereby plaintiff was injured, and that plaintiff could not by the exercise of ordinary care have avoided the consequences to himself of defendant's negligence, if shown, the plaintiff would be entitled to recover." This was error, for the reasons stated in ground 17; and because it left the jury to infer that it was part of the defendant's duty to have so protected the side of its car next to the parallel track as to make. it impossible for the plaintiff to alight from that side, and practically told the jury that if that car had no guard on that side of the car to prevent a person getting off, that would be a want of extraordinary diligence and would authorize a recovery. It was not bound under the law to furnish and keep on its cars any such means of preventing passengers from alighting on the side next to the double track.

19. The court charged: "If you believe from the evidence that the plaintiff was a passenger, as claimed, at the time and place, and was about to alight as claimed, and had not safely alighted, and if you believe from the evidence that the. car which is claimed to have run against the plaintiff was not provided with a proper brake-chain so as to enable it to be checked up with sufficient quickness, and that therein the defendant was guilty of slight neglect towards the plaintiff, and that such negligence caused plaintiff's injury, if injured, and that by ordinary care plaintiff could not have avoided the consequences to himself of defendant's negligence, if shown, the plaintiff would be entitled to recover." This was error, because it practically stated that the plaintiff had not alighted and ceased to be a passenger, and because it put defendant company under. the duty of exercising extraordinary diligence as to what kind

of a brake it had on its car, when, as to this and other acts of the agents in charge of that car, no such diligence was required of it under the law.

20. The court charged: "If you believe from the evidence that the plaintiff was a passenger, as claimed, at the time and place, and was about to alight, as claimed, and had not safely alighted from the car, and the officers, motorman and conductor, one or both, on the car which it is claimed struck the plaintiff, became aware of plaintiff's danger, if he was in danger, and then continued to go forward at a reckless rate of speed under the facts and circumstances of the case, and if you believe that doing so was slight neglect towards the plaintiff, and that thereby plaintiff was injured, and that by the exercise of ordinary care he could not have avoided the consequences to himself of defendant's negligence, if shown, plaintiff would be entitled to recover." This was error, for the reasons stated in ground 19, and because the conductor, though he might have become aware of plaintiff's danger, had nothing to do with the running of the car, and therefore could not have controlled its movements, and yet, under this charge, if he knew of the plaintiff's danger and the car continued to go forward, that fact alone would authorize a recovery.

21. The whole of the charge, in so far as it stated the right of the plaintiff to recover or not, as against the defendant, was error, in that it took up each particular allegation of negligence claimed by the plaintiff, and in detail, and in each instance emphasized the extreme caution required of the agents and officers in charge of both of said cars, and undertook in various portions of the charge to state what the plaintiff contended, not only from the allegations in the declaration, but from evidence put in on the trial. If the court should go into such particularity as to each of the allegations and contentions of the plaintiff, it should be equally particular as to the contentions of the defendant; whereas the only things in the charge presented in behalf of the defendant's contention as to why the plaintiff should not recover were practically confined to the general proposition, that if the plaintiff, by the exercise of ordinary care, could have prevented the injury to himself

caused by the defendant's negligence in some one of the many particulars set out in the declaration and charged by the court, he could not recover. The charge was one-sided, and it necessarily presented to the jury only the consideration of the plaintiff's side of the case.

22. The court refused to charge: "If you believe from the evidence in this case that the plaintiff, before stepping off the car and going upon the track of the defendant, did not look and listen, and you further find that this failure to look and listen was not the act of a prudent man, but on the other hand was the act of an imprudent man, and if you further find that if he had looked and listened before going upon the track he could have avoided the injury, then I charge you he can not recover; and this I charge you would be true although you may believe from the evidence that the defendant was negligent."

23. The court charged: "If the defendant was negligent in bringing danger into play, if there was danger brought into play, and if such negligence continued until it brought plaintiff within the danger, if it existed, then, though the motorman, when he became aware of the plaintiff's presence and personal danger,—if he did the best he could when it was too late for him to avert the danger, and the plaintiff nevertheless was injured, the law attributes the consequences to the original wrong, and the plaintiff would be entitled to recover, if you find that conduct was negligence, provided the plaintiff could not, by the exercise of ordinary care, have avoided to himself the consequences of defendant's negligence, if shown." This was error, because there was no general allegation in the declaration as to any negligent conduct on the part of the defendant in bringing danger into play, or any negligent conduct on the part of the defendant's officers in charge of the car that struck the plaintiff, at any time except at the moment and just before he was struck. The charge is misleading, in that it could not be discovered therefrom as to what negligence the court intended to charge,— whether it was of the officers in charge of the car from which the plaintiff was alighting, or the officers of the car that struck him. The charge is illegal, because if at the time the motorman discovered the plaintiff in a place of danger

he then did all he could to avoid hurting him, the defendant would not be liable, especially as there was no allegation, and certainly no evidence, of negligent conduct on the part of the motorman in charge of the car that struck the plaintiff, until the plaintiff was seen by him in a place of danger, and there was no evidence contradicting the testimony of the motorman in charge of that car, that, after seeing the plaintiff in danger, he did all he could to avoid the injury.

*N. J. & T. A. Hammond,* for plaintiff in error.
*Hillyer, Alexander & Lambdin* and *C. J. Haden,* contra.

LEWIS, J.   It appears from the record in this case, that the plaintiff was injured under the following circumstances: A car upon which he had been traveling had stopped at a street-crossing, for the purpose of enabling him to alight.   He departed from the car at the rear end, on the side next to a parallel track of defendant's line.   This side was as much open to egress from the car as the other.   The plaintiff was partially deaf.   There was some evidence that the conductor warned him of the approaching car, and went to the extent of following him out to the rear platform and putting his hands on his shoulders, with a view of preventing his alighting from that side of the car, and that plaintiff paid no heed to the efforts made to stop him. .  The plaintiff, on the other hand, claims that he heard no such warning, if any was given, and that no steps were taken to prevent his departure from the car on the side next to the parallel track.   Plaintiff further testified that he had made visits to the same locality before, and had gotten off at the same crossing and on the same side of the street; that his reason for getting off on that side on this particular occasion was that his business was on that side of the street; that it was raining at the time and he had his umbrella, and when he got to the end of the car, seeing that it was raining, he attempted to raise the umbrella and step down to the street, and just as his foot hit the ground the approaching car struck him.   It was clearly inferable from all his testimony that he was struck while alighting from the car, and before the act of alighting had been completed.   It further appeared

that the motorman in charge of the car that injured plaintiff saw, some distance before he reached the place of the accident, that the car upon which the plaintiff had been travelling was about to stop at the crossing for the purpose of discharging passengers. The opinion of witnesses as to the rate of speed at which the approaching car was moving differed, varying from four to seven miles per hour. When the plaintiff, however, commenced to alight from the steps, the car upon the parallel track was within only a few feet of him, and it was then impossible for the motorman to stop the same before coming in contact with the plaintiff's person. Plaintiff claimed that, in consequence of the injury, his capacity to earn money in his usual vocation was diminished one half. There was much evidence upon the subject of the injury and the damage he sustained, but no point is made upon the excessiveness of the verdict. Indeed, the damages proved largely exceed the amount of the finding of the jury.

The above, in connection with the reporter's statement of the case, is sufficient to a clear understanding of the errors complained of and the decision of this court thereon.

1, 2. The doctrine announced in the first headnote needs no elaboration. There is some apparent conflict in the authorities as to whether the relation of common carrier and passenger exists after the passenger has alighted from the car and before he has had opportunity of passing over and beyond a parallel track of the company's line; but certainly the relation exists while the passenger is in the act of alighting. When this injury occurred, therefore, the defendant company was under a legal obligation to use extraordinary diligence to protect the life and person of the plaintiff. We know of no rule of law that would necessarily restrict this doctrine to the agents of the company having in charge the particular car upon which the plaintiff had taken passage. The rule of the company introduced in evidence in this case required the motorman on the approaching car to be on the watchout, and to so have his car under control as to prevent any injury, not only to foot passengers who might be crossing the street, but to defendant's passengers who might be disembarking from the car that had

stopped at the public crossing for this purpose. To the ordinary traveller upon foot, the motorman was bound to exercise only ordinary care and diligence; to the defendant's passengers, he was bound to use extraordinary care and diligence. Especially is this the case when the motorman knew, or had reason to believe, that passengers were about to alight from the car that had stopped, and that they might alight dangerously near the track upon which he was running. This sufficiently disposes of the 15th, 16th, 19th and 20th grounds of the motion for new trial, there being sufficient allegations in the declaration and sufficient testimony to authorize the rulings of the court complained of in said grounds.

3. It is a self-evident proposition that no one has cause to complain of what does not hurt him. In the 4th ground of the motion objection is made to the question touching the effect of plaintiff's injuries as to the probable duration of his life. In answer to that question the witness stated that he was not prepared to say what effect it would have in this particular case. In the 6th ground of the motion objection is made to the question as to whether or not the motorman in charge of the car that struck the plaintiff was more or less addicted to intemperance. The witness answered that he did not know. In the 8th ground of the motion it appears that on the direct examination by the defendant's counsel, the witness stated that the rule of the company had been changed since the accident, in reference to the proper side of the street upon which the car was required to stop; and on the cross he was asked how long after the accident was it that the change was made? This was the question objected to, and the witness replied that he did not know. It is unnecessary to inquire whether or not the objections to these questions were well taken. Conceding, for the sake of the argument, that the questions were improper, the answers of the witnesses extract from them the sting of any illegality that they may have contained.

4. In the 11th ground of the motion objection is made to that portion of charge of the court stating to the jury why questions and answers were permitted as to whether or not one of the agents of the defendant company drank liquor, or was a

drinking man. The case did not call for any charge at all upon this subject, but inasmuch as there was no intimation by the court that the answers contained any such evidence, we do not see how the remarks of the court could have operated with any prejudice to the defendant company. We therefore think this an immaterial error and not good ground for a new trial.

5. It appeared from the testimony that at the time of the injury the plaintiff was following the business of a banker. Such was his regular vocation and had been for some time. It further appeared that as the result of his injuries his capacity to earn money in this vocation had been diminished one half. What his services were worth in this particular occupation at the time of the injury was a circumstance which the jury could consider in reaching a conclusion as to how much he should recover on this item in his claim for damages. There was, therefore, no error in the court admitting the testimony complained of in the 5th ground of the motion.

6. The practice of plaintiff as to his manner of departing from street-cars on other occasions, either before or after the injury complained of, could not be legitimately considered by the jury as throwing any light upon his conduct at the time when he was injured. Counsel for plaintiff in error contended that this testimony was admissible for the purpose of showing that the plaintiff was a man who persisted in getting off the cars in the way that suited him. This might open the door in any case of the sort to an endless investigation. If the defendant company is allowed to prove what plaintiff had done on another occasion, the plaintiff would certainly have a right to justify or explain his conduct upon such occasion. The question is, whether he was guilty of any act of negligence either contributing to or causing his injury; and the general character of the plaintiff touching his want of care or diligence with reference to the particular subject-matter under investigation is not a question in issue. The testimony was, therefore, irrelevant. *Atlanta & West Point R. Co.* v. *Smith*, 94 *Ga.* 107, (3). This disposes of the 7th and 10th grounds in the motion.

7. We think the questions set forth in the 9th ground of the motion for new trial were proper, under the pleadings and evi-

dence in this case.     The petition charged that one element of negligence which resulted in the plaintiff's injuries was, that the defendant knew it was dangerous to allow passengers to alight from a car on the side next to its parallel track, and nevertheless took no steps to prevent it.     Whether such omission amounted to negligence or not was not a question of law, but one for the jury to determine.     Under the allegation it was permissible for the plaintiff to show how passengers could be prevented from incurring this danger, by the use of ropes or other guards on the platforms of its cars, and the question as to whether extraordinary diligence required such precaution was properly left by the court for the determination of the jury.

8. The principle ruled in the 8th headnote is decided in the case of *Georgia Railroad* v. *Williams*, 74 *Ga.* 723, (3). This disposes of the 12th ground in the motion.

9. Complaint was made of the charge set forth in the 13th ground of the motion for new trial, "because it left the jury to infer that although they might believe from the evidence that the plaintiff was deaf, he was still required to use no more care than the ordinarily prudent man who could hear." We do not think the words of the charge complained of susceptible of such a construction. The charge is altogether as favorable to the defendant company as could be asked. The instruction was to the effect that plaintiff's deafness could not lessen the degree of care required; that, notwithstanding this defect, he should exercise the same caution "which every prudent man would exercise under the same or similar circumstances." This did not imply that he was required to exercise only that care which a prudent man who could hear would use, but which a prudent man in the same condition as to the impairment of his hearing would exercise.

10. The remaining grounds of the motion relate mainly to rulings of the court which counsel for plaintiff in error claimed were not authorized by the pleadings and the evidence. We do not deem it necessary to treat of them seriatim, but only to say in general terms that, in the light of the entire record in the case, there was no material error in any of the rulings to which exception has been taken.     After examining the entire

charge of the court, we think it fairly laid before the jury the contentions of the parties as presented by the pleadings and the evidence, and fairly presented to the jury the defenses relied upon by the plaintiff in error.

11. It is insisted in this case that the verdict is without evidence to support it; that the injury of plaintiff was not the result of any negligence on the part of the defendant, but that the same was caused by his own negligence, and could have been avoided by the exercise of ordinary care and diligence. Questions of absolute and relative diligence and negligence required of the parties in such cases are, under our law, peculiarly questions for the jury. While the court will not allow a verdict to stand which is contrary to the evidence and is without evidence to support it, yet if the verdict reached by the jury upon matters peculiarly within their province does not necessarily do violence to legitimate conclusions which may be deduced from the testimony, this court will not interfere with their finding. We could not, in this case, undertake to say, as a matter of law, that the street-car company, for instance, was guilty of no negligence and not even of slight neglect, when the motorman on one of its cars was approaching another car where he had reason to believe passengers might alight in dangerous proximity to the track upon which he was running, and neglected to have his car under such control that he could stop the same instantly in the event such a peril was presented; and especially if the rule of the company he was serving required him to so regulate the speed of his car, under the circumstances mentioned, as to have the same under absolute control. On the other hand, we are not prepared to say, as a matter of law, that when a passenger undertakes to leave a car on the side next to a parallel track without looking to see whether another car is approaching upon such track, he is guilty of such negligence as would prevent his recovery, regardless of the want of care exercised by the company's agents. In Booth's Street Railway Law, § 346, we find this principle announced: "Unless cars running on parallel tracks are so constructed and arranged as to receive and discharge passengers only on the outer side, it is not as a matter of law negli-

gence, when no rule of the company is violated, to attempt to board the car from the space between the parallel tracks." We see no reason why the same rule should not apply to a case where one attempts to *leave* the car on the same side.    The apparent conflict of authorities upon this subject, on examination, will be found to grow out of differences in the facts of each case, rather than in the principles enunciated.    In a Massachusetts case it was held, where a party stepped from an open car *before it had stopped,* and was struck and killed by an electric car coming from the opposite direction upon a parallel track, which was running at the rate of 15 miles an hour, the gong of which was sounding at the time, and there was nothing to prevent the deceased from seeing and hearing it, that a verdict was properly directed for the defendant.    Creamer *v.* West End St. Ry. Co., 31 N. E. 391.    On the other hand, in a Missouri case where it appeared that a rule of a cable railway company for the management of its trains at the junction of its lines required its agents to keep the intervening track free from trains while the discharging train was at the junction, it was held that persons leaving the train, while crossing the intervening track, were still passengers in so far as to be entitled to protection against the negligent management of trains on that track, and that, being so, they were relieved from the ordinary duty of looking or listening before crossing the track.    Burbidge *v.* Kansas City R. Co. 36 Mo. App. 669.    There is not necessarily any difference in the principles decided in the above two cases. In the Massachusetts case one main element of negligence on the part of the passenger consisted in undertaking to leave the train before it had stopped.    We are not prepared, however, nor is it necessary to an adjudication of this case, to follow either line of authority above cited.    Questions of negligence and diligence in such matters being, under the laws of Georgia, peculiarly for the jury to pass upon, we think the principle announced in the case of the Chicago Street R. Co. *v.* Robinson, 127 Ill. 1, 4 L. R. A. 126, the correct one to apply to this case.    There the court says: "Stepping onto the track of a street-railroad, whether the cars thereon are horse-cars or grip-cars, without first stopping to look to see whether a car is approaching, is

not, as a matter of law, and without any regard to surrounding circumstances, negligence, but the character of such action is a question of fact for the jury." With much more force could the rule last quoted be applied to the case we are now considering, in which a passenger is alighting from a street-car in the street at a point where extraordinary diligence is required of the company, and the exercise of which the passenger has a legal right to expect.

Judging from the amount of the verdict in this case, which was very small, considering the injuries of the plaintiff in the light of the testimony, the jury must have concluded that the plaintiff was himself guilty of negligence which contributed to the injury he sustained, and that such injuries having resulted also from a failure of defendant's agents to exercise proper diligence, a recovery should be had, but not for the full amount of the damages shown. In view of the entire record, we can not say that such a finding is without evidence to support it, and do not think that the judge below abused his discretion in overruling the motion for new trial.

*Judgment affirmed.    All the Justices concurring.*