## CENTRAL OF GEORGIA RY. CO. *v.* BANKS & FORTSON.

1. A petition containing allegations which are appropriate to an action seeking to enforce a liability against a railway company as a carrier of freight under the statute, as well as allegations appropriate to an action seeking to enforce against the company a common-law liability, and which are sufficient to set forth a complete cause of action under either the statute or the common law, is bad for duplicity, and, upon special demurrer attacking the petition upon that ground, the plaintiff would be put to his election. But where no special demurrer is filed to such petition, and on trial of the case, upon the issues made by the petition and answer thereto, a verdict is rendered for the plaintiff, it will not be set aside as being without evidence to support it, if either cause of action as set forth is supported by any evidence.
2. In the present case there was no evidence to authorize the jury to find a verdict against the defendant upon either a statutory or common-law liability.

          Argued May 23,—Decided August 8, 1907.

Action for damages. Before Judge Freeman. Muscogee superior court. August 4, 1906.

The plaintiffs, Banks & Fortson, delivered to the Louisville & Nashville Railroad Company a car-load of mules to be shipped from Horse Cove, Ky., to Columbus, Ga., via Birmingham, Ala. The contract of shipment was signed at Horse Cove, Ky., by Lazarus & Altsheler, from whom the plaintiffs purchased the stock. Fort-

son, a member of the plaintiff's firm, who was in charge of the mules, arrived in Birmingham in advance of the mules, and immediately called upon the agent of the Central of Georgia Railway Company at that place to secure a pass from Birmingham to Columbus. But, because it did not appear from the contract which had been made with the Louisville & Nashville Company that the car of mules was routed over the Central of Georgia Company's road, the latter company refused to issue the pass. Whereupon Fortson signed for his firm an independent contract with the Central of Georgia Railway Company to ship the mules from Birmingham to Columbus over that company's road. This contract recites, that, in consideration of said company agreeing to transport the car-load of mules at the reduced rate of $56.00, and a free pass to the owner or his agent on the train with his stock, the owner or shipper assumes certain risks specified in the contract, and releases the carrier from all liability for injury, loss, or damage, "which shall not affirmatively appear to have been caused by the negligence of said Railway Co." The Central of Ga. Ry. Co. then issued to Fortson a pass over its road from Birmingham to Columbus, and the mules were received by said company, and shipped to Columbus under the contract last referred to. When said car arrived in Columbus, it was found that some of the mules were badly injured and damaged. The plaintiffs brought suit against the Central of Ga. Ry. Co., as the last of two connecting carriers, to recover the value of the mules damaged; and also alleged in another count that "the injury and damage to said mules aforesaid was due to the negligence of the defendant, its servants and agents, in the transportation of said mules by it." The defendant denied that "it received the alleged stock from the Louisville & Nashville R. R. Co. as a connecting carrier for transportation to Columbus, . . but on the contrary this defendant says it received said stock from Banks & Fortson . . . on and under a written contract of affreightment signed and entered into by the said Banks & Fortson and by this defendant at Birmingham, Ala." It further answered, that if said stock were injured as alleged, "such injuries were not occasioned by any negligence upon the part of this defendant, its agents or servants, in handling or in transporting said stock from Birmingham, Ala., to Columbus, Ga., but such injuries, if any they had, were attributable to the inherent nature of the stock, . . and from the ex-

cepted clauses set forth in the contract, for which this defendant is not liable." Upon the trial both sides introduced testimony in support of their contentions, but there was no evidence tending to charge the defendant with any negligence in handling or transporting the mules from Birmingham to Columbus, while the defendant submitted testimony showing that it had been guilty of no such negligence. The jury returned a verdict in favor of the plaintiffs; and the defendant assigns error upon the judgment overruling its motion for a new trial.

*Charlton E. Battle,* for plaintiff in error.

*Hatcher & Carson,* contra.

BECK, J. (After stating the facts.) There are allegations in the petition appropriate to an action seeking to enforce against the defendant a liability under the statute on account of its being the last of a connecting line of carriers, and other allegations appropriate to an action seeking to enforce a common-law liability upon the defendant; and as against a general demurrer the allegations sufficiently set forth a good cause of action, either under the common law or under the statute. Such a petition, upon special demurrer pointing out the defects, would have been held to be bad for duplicity. But there having been no special demurrer to the petition, and the parties having gone to trial upon the petition as it stood and the answer thereto, and having introduced evidence relative to the issues raised, we have to determine whether or not there was evidence to support the verdict in favor of the plaintiffs under both of the causes of action as stated in the petition.

The property alleged to have been injured and damaged in transportation was delivered to the initial carrier at Horse Cove, Ky., under a contract of shipment made with the Louisville & Nashville Railroad Co., to be transported from there to Columbus, Ga. Before the property being transported (a car of mules) reached Birmingham, Ala., over the line of railway of the initial carrier, Fortson, a member of plaintiff's firm, who it appears was in charge of the stock, and who had preceded, upon a passenger train, the freight-train to which was attached the car of mules, upon his arrival at Birmingham went to the office of the defendant company in that city to get a pass from Birmingham to Columbus, which it seems it was customary for this railway company to issue to shippers of stock who were in charge of the same. The agent

of the defendant company, to whom he applied for the pass, refused at first to issue it, because the car of freight was not routed over the defendant's line of railroad. Then, instead of standing upon the original contract of shipment from Horse Cove, Ky., to Columbus, Ga., and having the final carrier to receive the mules from the preceding carrier as in good order, if as a matter of fact they were in good order, Fortson, in order to procure a pass, entered into a new contract of shipment with defendant company, or, as stated in his own words, "I entered into this contract for the shipment on account of this not having been marked in care of the Central of Georgia Railway at Birmingham. I did enter into this contract (exhibit 9) at Birmingham, in order to get a pass from Birmingham to Columbus. The defendant charged me local rates of $56 on the shipment of mules in question from Birmingham to Columbus. . . In addition to that, defendant issued me free transportation from Birmingham to Columbus."

Not only is there an entire absence of direct proof, or proof to show a state of facts from which the presumption would have arisen that the freight in question was received in good order from the initial carrier, but from the evidence introduced by the plaintiff it is shown that upon an independent contract of shipment, entered into between the plaintiff and defendant, the car-load of stock was turned over to the defendant by the shipper, to be transported under the contract last referred to. There is nothing to support the cause of action seeking to enforce liability against the defendant under the statute; and it remains to determine whether or not there is evidence to support a verdict against the defendant company under its common-law liability. After a careful reading of the record, it appears that this evidence was wanting. Injury to a number of the mules shipped was shown, but every presumption of negligence upon the part of the defendant railway company was overcome by uncontroverted testimony.

In view of the conclusions that we have reached, it is unnecessary for us to pass upon the questions raised by the assignments of error upon the court's refusal of the written requests to charge, submitted by counsel for the plaintiff in error. And the exceptions to the court's rulings upon the admission of evidence seem to have been abandoned.

*Judgment reversed. All the Justices concur.*