42881. WILLIS et al. v. HILL.

Argued June 6, 1967—Decided October 10, 1967—Rehearing denied December 18, 1967—

*Erwin, Birchmore & Epting, Nicholas P. Chilivis,* for appellants.

*Heard & Leverett, E. Freeman Leverett,* for appellee.

EBERHARDT, Judge. This case was tried and all rulings were made prior to the effective date of the Civil Practice Act; consequently its provisions have no application on appeal. *Abercrombie v. Ledbetter-Johnson Co.*, 116 Ga. App. 376 (157 SE2d 493). Because of provisions of the Act itself, e.g., § 86, the cases of *Fulton County v. Spratlin,* 210 Ga. 447 (2) (80 SE2d 780), *City of Valdosta v. Singleton,* 197 Ga. 194, 208 (28 SE2d 759), and others similar, do not require a different result.

■ The motions to dismiss the appeal and "to affirm as to questions raised in motion for new trial" are without merit and are denied.

■ While this case is similar to *Hillhouse v. Matthews Contr. Co.*, 112 Ga. App. 73 (143 SE2d 686), and the petition presents a very close question of whether plaintiff's decedent exercised ordinary care for his own safety to avoid the hazard created by the speed and proximity to the intersection of defendants' tractor-truck after such hazard became, or in the exercise of ordinary care should have become, apparent to him, in view of the allegation that defendants' truck was over the center line of the highway as it approached and came into the intersection, we are unable to hold that the answer to this question is so palpably clear, plain and indisputable that it should be announced on general demurrer. Accordingly it was not error to overrule the general demurrer. See *Yandle v. Alexander,* 116 Ga. App. 165 (156 SE2d 504).

■ The special demurrer to, and motion to strike, the specification of negligence contained in Paragraph 20 (B) (h) on the grounds that it is a conclusion, in that Paragraph 12 contradicts it, was properly overruled. Assuming for the purpose of argument that the demurrer itself is not subject to the criticism that it asks for improper relief from the defects complained of (see *Hughes v. Jackson,* 109 Ga. App. 804 (137 SE2d 487)), we do not find any inconsistency in or contradiction between the two paragraphs. Enumeration of error No. 3 is without merit.

■ Paragraph 20 (B) (i), specifying that defendant Willis was negligent "In failing to turn said tractor-truck to the right so as to avoid colliding with deceased's vehicle," was demurred to on the ground that this allegation was a conclusion and on

the ground that no facts were alleged showing a duty on the part of defendant to turn the truck to the right under the circumstances alleged in the petition.

These demurrers are without merit. It is positively alleged in Paragraph 12 (a) that there was a width of at least 12 feet to the right of plaintiff's decedent in which the tractor-truck could have passed without striking the pick-up truck. In addition, it is alleged that as Willis approached the intersection, driving south on the Bowman-Goldmine Road, the tractor-truck was across the center line in violation of *Code Ann.* §§ 68-1633 and 68-1637, the impact occurring at a point approximately 5 feet across the center line of the Bowman-Goldmine Road in the northbound lane. Under these allegations the specification of negligence is not subject to the criticisms urged as a matter of pleading. Enumerations of error Numbers 4 and 5 are without merit.

■ ■ Respondeat superior and negligent entrustment present separate theories of establishing a liability link from the negligence of the driver to the employer-entrustor since the first theory proceeds on the basis of imputed negligence or vicarious responsibility, whereas the second is brought under the negligence-proximate cause rubric. Accordingly the duplicity demurrer was good, and the two theories should have been pleaded in separate counts. Cf. *Buffington v. Atlanta, B. & C. R. Co.,* 47 Ga. App. 85, 88 (169 SE 756) ; *Southern R. Co. v. McCrary,* 55 Ga. App. 406 (2) (190 SE 195) ; *Paschal v. Hardwick,* 68 Ga. App. 571 (1) (23 SE2d 465), holding that a petition alleging in one count violations of the duty to exercise ordinary care and of the duty to refrain from wilful and wanton misconduct is duplicitous; *Central of Ga. R. Co. v. Banks & Fortson,* 128 Ga. 785 (1) (58 SE 352), holding that a petition in one count seeking to enforce a statutory liability and a common law liability for the same matter is duplicitous; and *City of Atlanta v. Minder,* 83 Ga. App. 295 (1) (63 SE2d 420), holding that "A petition that contains in one count three theories of recovery or causes of action is duplicitous and is subject to a special demurrer pointing out such defect." Cases in which the two theories have appeared in one count are physical precedents only—no duplicity demurrer having been filed, urged or ruled on.

Enumeration of error 22 complains that the court erred in overruling defendants' motion for summary judgment on the issue raised by Paragraphs 19A and 20A of plaintiff's petition as finally amended (negligent entrustment of a motor vehicle to a known incompetent driver). Paragraph 8 of the motion urges that defendants are entitled as a matter of law to a judgment as to negligent entrustment, and the prayer is for judgment on this issue and that Paragraphs 19A and 20A be stricken and physically deleted from the petition. *In their motion defendants admit that "Benjamin Willis was at the time of the collision the servant and employee of Southern Poultry, Inc., acting within the scope of his employment as such."*

It is defendants' contention that where the liability of an employer is admitted under the doctrine of respondeat superior for the negligence charged against its driver, further liability cannot be established on the theory of negligent entrustment of the vehicle to an incompetent driver. Objection to the presence of this issue in the case, with its attendant consequence of rendering relevant the introduction of evidence of the prior driving record of the employee, lies at the very heart of this case and is raised, directly or indirectly, in 151 enumerations of error which complain, inter alia, that the duplicity demurrers to this one-count petition should have been sustained, that defendant's motion for summary judgment should have been granted, and that all evidence concerning Willis' prior driving record should have been excluded.

The question before us is whether, where the plaintiff seeks to impose liability on the defendant driver's employer under both the doctrine of respondeat superior and the theory of negligent entrustment for the negligence charged against the defendant employee, and the employer admits in judicio its liability under respondeat superior for the negligence, if any, of the defendant driver on the occasion in question, the plaintiff may nevertheless pursue the negligent entrustment theory and introduce evidence regarding the employee's prior performance as a driver. Although this question has never been decided by our own appellate courts,[1] our research discloses that it is an-

---

[1] Because it has not heretofore been raised.

854

swered favorably to defendants by the overwhelming weight of authority from other jurisdictions.

In Patterson v. East Texas Motor Freight Lines, (Tex. Civ. App.) 349 SW2d 634, 636, the court held: "[Plaintiffs] in their petition plead several grounds of primary negligence against the driver of the truck, and in addition plead the truck company was guilty of negligence on the theory of 'negligent entrustment.' [Plaintiffs] alleged the driver was an employee of the truck company and acting within the scope and course of his employment with the truck company at the time of the collision. The [defendants] stipulated and agreed that this was true and that the doctrine of respondeat superior would apply in this case. [Defendants] then moved the trial court to strike the allegation as to negligent entrustment which motion was granted and the [plaintiffs] contend this was error. We are unable to agree with [plaintiffs] upon this theory. Evidence as to prior accidents, or prior acts of negligence on the part of the driver, would be admissible only to prove the driver was unsafe or incompetent, and not to prove he was negligent on the occasion in question. The theory of negligent entrustment in order to bind the truck company became immaterial as soon as the stipulation as to course of employment was made. There was no issue left to submit to the jury upon which their theory as to negligent entrustment would be admissible." Accord: Luvual v. Henke & Pillot, Division of the Kroger Co. (Tex. Civ. App.) 366 SW2d 831 (plaintiff was properly deprived of negligent entrustment as a theory of recovery based on allegations of five previous automobile collisions and two speeding offenses where defendant admitted that its truck operator was defendant's agent and was acting in the course and scope of his employment at the time of the collision); City of Houston v. Watson (Tex. Civ. App.) 376 SW2d 23, 33 ("With respect to negligent entrustment [of a motor scooter] by the father [to his minor son who was injured when the motor scooter struck a hole in the street], it will suffice to say that the minor's failure to have a license and his prior misconduct would be immaterial as concerns the father's cause of action in view of his stipulation that any negligence on the minor's part would be imputed to him, and the

well established law that in order to show proximate causation of an accident resulting from negligent entrustment, it is necessary to show negligence on the part of the driver of the vehicle which proximately caused such accident"); Frasier v. Pierce (Tex. Civ. App.) 398 SW2d 955 (3) (striking paragraph of plaintiffs' petition alleging that defendant driver had been charged with and had pleaded guilty to several traffic violations and had been involved in eight automobile accidents, and excluding evidence of driving record of driver was not error, even though plaintiffs had sued defendant automobile owner on the theory of negligent entrustment of the vehicle to the driver, in view of a stipulation that at the time of accident the driver was an employee of the owner and was acting in course of his employment); Rodgers v. McFarland (Tex. Civ. App.) 402 SW2d 208, 210 ("We see no error in the court's excluding the driving record. It would have been admissible on the issue of negligent entrustment, to establish the liability of the owner for the acts of the driver, but it became immaterial on that issue when the owner admitted liability [for the driver's acts]").

In Armenta v. Churchill, 42 Cal. 2d 448 (267 P2d 303), plaintiffs sought to establish liability of the master-entrustor on the theory of agency in the first count of the complaint and on the theory of negligent entrustment to a careless, negligent and reckless driver in the second count. In their answer defendants admitted the agency and scope of employment of the driver. Upon the trial plaintiffs offered, in support of the negligent entrustment theory, evidence to show that the driver had been found guilty of some 37 traffic violations, including a conviction of manslaughter, and that the master-entrustor had knowledge of these facts. Defendants objected to the offered evidence on the ground that it was directed to an issue which had been removed from the case by the admission of agency. The California Supreme Court affirmed the lower court's exclusion of the evidence, holding that since the allegations of agency and negligent entrustment merely represented alternative theories under which the master-entrustor could be held liable for the tort of the driver, the *admission of agency removed the issue of negligent entrustment from the case* and there was no material issue

remaining to which the offered evidence could be legitimately directed.

In Houlihan v. McCall, 197 Md. 130, 137 (78 A2d 661), the court asserted: "The [defendants] next contend that the court erred in admitting into evidence the driving record of the [defendant driver] and examining him about it. The amended declarations, in addition to alleging negligence on the part of the driver in the course of his employment, also alleged negligence on the part of the employer in selecting or retaining a driver known to be incompetent and reckless. . . *Before the trial, agency was formally admitted* by the defendants, upon demand of the plaintiffs. . . [I]n the instant case *when agency had been admitted it was quite unnecessary to pursue the alternative theory in order to hold the corporate defendant. It was only necessary to prove negligence on the part of the driver.* In the recent case of Nesbit v. Cumberland Contracting Co., Md., 75 A2d 339, after reviewing the authorities, we held that it was prejudicial error to permit cross-examination of the plaintiff operator as to previous convictions for traffic offenses, because of the danger that the jury might draw the inadmissible inference that because the plaintiff had been negligent on other occasions he was negligent at the time of the accident. The same danger was present in the instant case. . . The answer [of the driver on the witness stand admitting convictions for traffic violations on prior occasions] might have some probative force as one of a chain of circumstances tending to prove a habit of recklessness known to the employer, although it was irrelevant to establish negligence at the time of the accident. Where a driver's known incompetence is in issue, the exclusionary rule must yield, no doubt, to the necessity of permitting proof of previous misconduct. But *where agency is admitted it can serve no purpose except to inflame the jury.* Under the circumstances, we think it was error to admit the driving record . . . and error to permit the plaintiffs to examine the driver in regard to previous convictions, which had no relevance to the only issue remaining in the case." (Emphasis supplied.) In State v. Hatfield, 197 Md. 249, 253 (78 A2d 754), the Maryland court stated that in the Houlihan case, just quoted, "we

recognize the [negligent entrustment] principle as applicable to relations other than that of parent and child, but hold it immaterial and irrelevant when the supplier and the supplied are master and servant or employer and employee, and the master is admittedly liable for the negligence, if any, of the servant which caused the injuries in question."

In Nehi Bottling Co. v. Jefferson, 226 Miss. 586, 596 (84 S2d 684), in reversing a judgment for plaintiff, it was held: "It was error for the trial court to admit testimony for plaintiff as to other accidents in which [defendant driver] allegedly was involved. This could have been admissible to obviate the necessity of proving agency, under the rule that where one entrusts a vehicle to one known to be a reckless driver, the former is responsible for the acts of the driver, although the driver was not about the owner's business. But in this case [defendants'] answer admitted that [the driver] was within the scope of his employment at the time and place in question, and [the driver] so testified."

Heath v. Kirkman, 240 N. C. 303, 307 (82 SE2d 104) involved rulings on the pleadings before answers had been filed. It was alleged in Paragraph IV of the complaint: "That the defendant [driver] William Atkins, due to careless and reckless propensities well known to his employers and co-defendants in the careless and reckless operation of motor vehicles and particularly the careless and reckless operation of the Kirk's Sineath Motor Company wrecker, was and is known by the descriptive appellation and nickname, 'Wild Bill' Atkins." Paragraphs XII (d) alleged (p. 308): "The defendants Albert T. Kirkman and L. John Kirby, trading as Kirk's Sineath Motor Company, were negligent in having and retaining in their employ William Atkins and entrusting to him the operation of their wrecker, knowing of his reckless habits and disposition in the operation of motor vehicles generally and of their wrecker in particular." The Supreme Court of North Carolina held that Paragraph IV had been properly stricken and that Paragraph XII (d) should be stricken if allegations of agency were admitted when answers were filed, stating (p. 307):

"We recognize the principle that the owner of a motor vehicle

who entrusts its operation to a person whom he knows, or by the exercise of due care should have known, to be an incompetent or reckless driver, thereby becomes liable for such person's negligence in the operation thereof; and in such case the liability of the owner is predicated upon his own negligence in entrusting the operation of the motor vehicle to such a person. [Citations omitted]. *This principle is applicable only when the plaintiff undertakes to cast liability on an owner not otherwise responsible for the conduct of the driver of the vehicle. . .* The allegations of the complaint are explicit to the effect that Atkins on the occasion of plaintiff's injury was acting within the scope of his employment by his codefendants and in furtherance of their business. Of course, we cannot assume that such allegations of agency will be admitted when answers are filed. If admitted, the liability of the defendant employers would rest upon respondeat superior; and subparagraph (d) of Paragraph XII would become irrelevant and prejudicial and should be stricken upon motion then made." (Emphasis supplied.)

In Prosser v. Richman, 133 Conn. 253 (50 A2d 85), plaintiff was injured when struck by an automobile driven by a fifteen-year-old boy. Suit was brought against the parents of the boy who admitted that they were liable if the minor son were liable. In affirming the setting aside of the verdict for plaintiff, the court stated (p. 256): "Their [defendants'] claim that the issue raised by the allegation of the complaint to the effect that the parents of Harold Richman [minor driver] were negligent in allowing an unlicensed and incompetent person to drive the car was irrelevant upon the claims of proof was correct. . .- The parents' liability for any negligence of Harold was admitted, and his negligence must be proven before they can be held liable. [Citations omitted]. As is indicated in Greeley v. Cunningham, 116 Conn. 515, 518, 165 A. 678, the application of the principle embodied in the allegation now being considered [negligent entrustment] is limited to cases where the question of agency is not involved."

The Supreme Court of Washington reached the same conclusion in Shielee v. Hill, 47 Wash. 2d 362 (287 P2d 479).

Contrary holdings are found in Clark v. Stewart, 126 Ohio St.

263 (185 NE 71) and possibly in Perin v. Peuler, 373 Mich. 531 (130 NW2d 4). Clark v. Stewart holds that in a case in which both agency and negligent entrustment are pleaded, the admission of agency, bringing the case within the theory of respondeat superior, does not "banish the theory" of negligent entrustment. The rationale is simply that respondeat superior and negligent entrustment are distinct theories and may be pleaded as such. While we agree that they are distinct, we do not agree that it follows that proof of prior misconduct should be allowed to go to the jury where the master-owner is admittedly liable under respondeat superior for the conduct of the driver. The case simply does not address itself to the question of the materiality of the negligent entrustment theory where the master-entrustor admits that he is responsible in any event for his driver's negligence, if any.

Perin v. Peuler is a doubtful precedent. Were it not for the dissenting opinions in that case, we would conclude that the majority opinion stands only for the proposition that the common law liability for entrusting the operation of one's motor vehicle to a known incompetent driver is not ipso facto superseded by owner-liability statutes.[2] Stated another way, the majority seem to hold that liability may be *pleaded* under both the statute and the negligent entrustment theory, treating the question as if the defendant owner-entrustor had not responded to plaintiff's pleadings or was affirmatively seeking to insulate himself from the driver's injurious conduct. The facts of the case as developed in the dissenting opinions, however, indicate that the owner-entrustor had admitted liability under the pleaded ownership statute for the negligence, if any, of the

---

[2]Which have the general effect of making the owner of a motor vehicle liable for injuries negligently inflicted as a result of the use or operation of the vehicle by persons other than the owner himself if the operation of the vehicle was with the owner's consent, or for his benefit. Our owner-liability statute (Ga. L. 1955, p. 454; *Code Ann.* § 68-301) was held unconstitutional in *Frankel v. Cone*, 214 Ga. 733 (107 SE2d 819). But for the same reasons the rule would apply when "family purpose" is pleaded and admitted.

driver, and that thereafter plaintiff sought leave to amend, which was granted by the majority, to add allegations of negligent entrustment. Thus the dissents resist the majority's allowance of the negligent entrustment amendment on the ground that negligent entrustment may not be pursued where liability for the driver's conduct is otherwise admitted.

We therefore treat Perin v. Peuler, 373 Mich. 531, supra, as contrary to the weight of authority. As such, it is singularly unconvincing. The only justification advanced by the majority for the allowance of the negligent entrustment amendment is that " [i]t may, at very least, awaken some over-indulgent parent to the fact that . . . his personal distinguished from vicarious toes have been exposed to the heavy bootstep of liability. . ." P. 535. The query is obvious.

More persuasive are the dissenting opinions. We quote from Justice Kelly's dissent (p. 553 et seq.): "In this case there is no need to pursue the common law negligent entrustment theory and no need for this court to allow the plaintiff to possibly prejudice the defendants' rights to a fair hearing because, as has been emphasized, the ownership liability part of this case was completed at the termination of pleadings. After all, this is the purpose of pleadings: To remove from trial those issues not disputed. Because of the statute and defendant-owner's admission that he would not be able to escape the statute, plaintiff's only task in this present case is to establish the driver's negligence on the day and in the incident in which plaintiff claims she was injured. . . Why, then, if there is no need to establish negligent entrustment in order to hold the owner liable, does the plaintiff in the present case seek to expend the time, effort and money involved in obtaining and introducing proof to establish this liability link already admitted to exist because of statute? Is it that proof of yesterday's accidents will be helpful to determine today's responsibilities? . . . Is it because the amount of plaintiff's verdict would be enlarged by showing the proof of the driver's previous negligence, thus meeting a jury's reluctance to render a large verdict against the owner without such proof. . . . I quote with approval the following from the trial court's denial of the motion: '. . . [T]he purpose of the proposed amendment appears to be solely that of introducing a driving rec-

ord which would influence the jurors' decision in connection with the alleged negligence of defendant driver. . . The . . . amendment goes only to the liability of defendant-owner who will be liable as owner if defendant-driver was negligent in the operation of his automobile. It appears, therefore, that the sole purpose of the proposed amendment is only to bring in the driving record of defendant-driver and thereby influence the jury. Since defendant has admitted that the car was being driven with the knowledge and consent of defendant-owner, the defendant-owner will be liable if defendant-driver is negligent.' "

We also quote from the dissenting opinion of Justice O'Hara (p. 562): "The dichotomy between Mr. Justice Black [writing for the majority] and myself occurs when he would allow the assertion of the common-law doctrine of negligent entrustment and the admissions of the proofs of incompetence incident thereto in cases where ownership and consent to operate under our statute are alleged and not denied. For in such a case we in truth do precisely what the trial judge said we do—allow the assertion of this ground of liability 'solely to influence the jury.' Thus I would leave unimpaired the doctrine of negligent entrustment of a motor vehicle in our State but I would restrict its use to those cases wherein liability of the owner is not already alleged and admitted by reason of the operation of our statute."

In the recent case of Breeding v. Massey, 378 F2d 171 (8 Cir.), an action brought against both the employer and employee-driver in a state court of Arkansas then removed to federal court, it was held that under Federal Rules both theories might be pleaded and relied on for recovery. However, the court asserted (p. 178) that "In the instant case, we do not have before us a situation where liability has been admitted on the scope of employment theory[3]. . . Hence, we are not confronted with

---

[3]Indeed, as the court points out, in both the trial court and on appeal defendant had contended that the employee was not acting within the scope of his employment, and one of the points urged on appeal was that "The jury should have been instructed as a matter of law that Bobby Breeding was not in the course and scope of his employment by Hugh Breeding, Inc., at the time of the occurrence complained of." P. 174.

the problem of what the Arkansas court would hold if scope of employment were conceded. But see Ozan Lumber Co. v. McNeeley, 214 Ark. 657 (217 SW2d 341, 8 ALR2d 261). 20 Ark. L. R. 101, 106; 8 AmJur2d, Automobiles & Highway Traffic § 573."[4]

We find the weight of authority and the dissenting opinions in Perin v. Peuler persuasive here. Respondeat superior liability, if any, having been admitted, we hold that the motion for summary judgment should have been granted and the negligent entrustment issue removed from the case.

It is settled by the decisions of the Supreme Court and of this court that as to Willis, the driver, proof of his prior driving record, or of his general character for carelessness or recklessness in driving, is impermissible. *Hines v. Bell,* 104 Ga. App. 76 (3a) (120 SE2d 892); *Healan v. Powell,* 91 Ga. App. 787, 790 (87 SE2d 332); *Atlanta & W. P. R. Co. v. Newton,* 85 Ga. 517 (11 SE 776); *Central R. & Bkg. Co. v. Kent,* 87 Ga. 402 (13 SE 502); *Atlanta & W. P. R. Co. v. Smith,* 94 Ga. 107 (20 SE 763); *Western & A. R. Co. v. Slate,* 23 Ga. App. 225 (3) (97 SE 878); *Cox v. Norris,* 70 Ga. App. 580 (1) (28 SE2d 888); *Grannemann v. Salley,* 95 Ga. App. 778 (1) (99 SE2d

---

[4]In Ozan Lumber Co. v. McNeeley, 214 Ark. 657, supra, the court dealt with the question of whether the negligent entrustment theory might be invoked against one who selected an incompetent *independent contractor.* In Arkansas-Louisiana Lumber Co. v. Causey, 228 Ark. 1130 (312 SW2d 909) the suit was against both the employer and the employee-driver, but the court asserts in its opinion that "Doss [the driver] was not acting within the scope of his employment at the time." See St. Louis, I. M. & S. R. Co. v. Stroud, 67 Ark. 112 (56 SW 870), a suit against a railroad and its watchman, who had driven plaintiff from the depot and prevented his boarding the train. Plaintiff sought to show that the watchman, while in the defendant's service, had nine years previously shot a man at the freight depot, for showing that the watchman was incompetent and that the railroad had knowledge of it. The evidence was admitted, but on appeal the Supreme Court reversed, holding the evidence to have been incompetent, prejudicial, and that it should have been excluded.

338); *Smith v. Morning News, Inc.*, 99 Ga. App. 547, 550 (3) (109 SE2d 639). Nor is it permissible to show particular instances of negligence on other occasions. *City of Dalton v. Humphries*, 139 Ga. 556 (3) (77 SE 790); *Rome R. &c. Co. v. Lansdell*, 13 Ga. App. 795 (79 SE 1131); *Western & A. R. Co. v. Slate*, 23 Ga. App. 225, 226 (3), supra; *Hollomon v. Hopson*, 45 Ga. App. 762, 765 (8) (166 SE 45).

When the driver's employer comes in and admits the agency and scope of employment, or that he is liable for the driver's acts under the doctrine of respondeat superior if the driver has been negligent, the plaintiff may recover all damages to which he is legally entitled by establishing the driver's negligence. He can have no greater right and is entitled to no greater recovery by showing a negligent entrustment to an incompetent driver. It can serve only as an instrument of prejudice. By making the admission the employer says to the plaintiff, "I stand or fall with my employee; I am liable for whatever damage he may have negligently inflicted." In this situation the liability link to the employer is established, rendering proof of the negligent entrustment unnecessary, irrelevant, and inflammatory, and the very same reasons for excluding the evidence of the driver's prior record, etc., as to him, apply with equal force as to the employer.

A contrary statement in 8 AmJur2d 125, Automobiles and Highway Traffic, § 573, cites as the *sole authority* Clark v. Stewart, 126 Ohio St. 263 (185 NE 71), a totally unreasoned case with which we have dealt and which is opposed to the overwhelming weight of authority, overlooked by the authors of AmJur2d. We agree that in an entrustment case evidence showing the driver's prior recklessness and the employer's knowledge thereof, though prejudicial against the employer-entrustor, is relevant, and indeed essential, to prove liability *under the negligent entrustment theory*. But the question in this case is not whether the evidence as to prior recklessness, etc. is relevant to show liability under the negligent entrustment theory, but whether the ultimate proof of negligent entrustment itself is relevant where the employer stands ready to answer for any wrongdoing of his employee.

The general rule is that evidence should be excluded as to matters about which there is no dispute and that the record should not be burdened by proof of facts admitted. See *Hendrick v. Daniel,* 119 Ga. 358 (2) (46 SE 438); *Lovell v. Frankum,* 145 Ga. 106 (5) (88 SE 569); *Bankers Trust &c. Co. v. Hanover Nat. Bank,* 35 Ga. App. 619 (134 SE 195). The plaintiff should not be permitted to do by indirection what she cannot by direction do, i.e., influence the jury to find against the driver on account of some negligent act which he may have committed at a prior time, on another occasion, in a different situation and with other parties.

It must be remembered that there is more than one way to impose liability upon A for B's conduct. Possibilities for doing so, recognized in varying degrees in various jurisdictions, are agency, negligent entrustment of a chattel to an incompetent, conspiracy, the family-purpose doctrine, joint enterprise, and ownership liability statutes. Assuming that all these theories for attaching liability to A for B's wrongdoing were recognized in this jurisdiction and that all six grounds were properly pleaded in one case for one injury, would the plaintiff be entitled, as "the master of his own lawsuit,"[5] to introduce evidence to prove a liability link or "breach of duty" under each and every ground, notwithstanding the fact that A does not contest his liability for B's conduct? Under a contrary holding, if A has breached six "duties" to the plaintiff, the plaintiff may take all the trial time necessary, with corresponding space in the

---

[5]"The party who brings a suit is master to decide what law he will rely upon." The Fair v. Kohler Die & Specialty Co., 228 U. S. 22, 25 (33 SC 410, 57 LE 716). The plaintiff is a builder, and may choose the plan for his case. *Ellison v. Ga. R. Co.,* 87 Ga. 691 (13 SE 809); *Johnson Lmbr. Co. v. Akers Lmbr. Co.,* 48 Ga. App. 329 (172 SE 667). He may select, at the beginning, what his theory is to be. He may add new theories by amendment. But in doing so he calls for admissions or denials from the defendant, and while he is entitled to the benefit of admissions made and the defendant takes the burden of them, he cannot deny to the defendant any benefit that may accrue therefrom.

record, to prove liability under all six theories, regardless of the fact that A admits directly the ultimate thing sought so laboriously to be established in the first instance—that he is legally responsible in any event for B's conduct. The fallacy of the situation is not relieved by declaring that A, the employer-entrustor in this case, has breached two, or six, or a hundred "duties" to the plaintiff. In cases where A is sought to be held for an injury caused by B, the employee-driver in this case, the "breach of duty" by A is nothing more than a theory under which responsibility for B's conduct is tacked onto A. The result is the same whether A's "duty" be called primary or vicarious. If, then, the only purpose and relevance of evidence showing the employee's incompetence and the employer's knowledge thereof is to show a liability link from the employee to the employer, and this link is admitted to exist, the evidence should be excluded under the general rule regarding undisputed matters, leaving as the only question the one contested issue—whether the employee's negligence caused the injury.

To allow the prior driving record in evidence would create a danger that the jury might draw the inference long forbidden in our law—that because the employee had been negligent on other occasions he was negligent on the occasion in question. Admission of evidence which is both irrelevant and prejudicial is harmful error. *Central R. v. Moore,* 61 Ga. 151; *Brunswick & W. R. Co. v. Wiggins,* 113 Ga. 842 (4) (39 SE 551, 61 LRA 513; *Central of Ga. R. Co. v. Prior,* 142 Ga. 536, 537 (2) (83 SE 117); *Macon, D. & S. R. Co. v. Musgrove,* 145 Ga. 647, 648 (1) (89 SE 767); *Summer v. Hogsed,* 41 Ga. App. 207 (2) (152 SE 260); *Underwood v. Atlanta & W. P. R. Co.,* 105 Ga. App. 340, 350 (2a) (124 SE2d 758). In addition it would violate the undisputed-matter rule. Thus our holding here is in accordance with principles firmly established in our law and with the overwhelming weight of authority from other jurisdictions on the specific point; and, in addition, it has the virtue of being fair to both sides, which is an element in our quest for justice.

In holding as we do, however, we agree with Justice O'Hara that "[d]efendants . . . cannot have their defense cake and eat it too." In cases where liability would be multiple—e.g.,

traditional agency, family purpose and negligent entrustment—plaintiffs are free to choose their basis of relating the acts of the driver to the non-driver defendant and may plead and pursue all until such time as the non-driver defendant admits legal responsibility for the performance of the driver in the occurrence giving rise to the litigation. Should the non-driver defendant (usually the owner) seek to insulate himself from such performance, however, or should his, admission be ineffective to subject him to liability to the same extent as could be imposed upon him as a "negligent entrustor,"[6] a· plaintiff may proceed under the entrustment theory. It is to the latter point that a discussion of comparative negligence and punitive damage should be directed. We fail to see how *in this particular case* any benefit under these principles would accrue to plaintiff by virtue of the negligent entrustment theory which could not be obtained under a simple admission of responsibility for the employee's conduct. The comparative negligence doctrine must be directed to a compari-

---

[6]An obvious example of such a situation occurs where agency and scope of employment are admitted but where the driver cannot be held "negligent" or "liable" because at the time of the collision he suddenly and unexpectedly suffered a blackout likely to occur as a result of a physical condition unknown to him (see *Freeman v. Martin,* 116 Ga. App. 237 (156 SE2d 511)) but known to the entrustor, or because the driver is a minor of an age making him incapable of being negligent. The admission, framed in terms of agency only, is ineffective to subject the non-driver defendant to liability under respondeat superior in the example because of the well-settled rule that the servant must be held liable for the master to be liable, in contrast to the rule of negligent entrustment (under which such a minor or fainting driver might be released and the entrustor held), that the injury must be proximately caused by the injurious conduct of the driver resulting from his incompetency known to the employer. See *McKinney v. Burke,* 108 Ga. App. 501, 505 (133 SE2d 383); *Burks v. Green,* 85 Ga. App. 327, 331 (69 SE2d 686); *Mason v. Powell,* 92 Ga. App. 496 (88 SE2d 734); *Crisp v. Wright,* 56 Ga. App. 338 (192 SE 390); *Windsor v. Chanticleer & Co.,* 89 Ga. App. 116 (78 SE2d 871); *Myrick v. Alexander,* 101 Ga. App. 1, 5 (112 SE2d 697); *Jones v. Dixie Drive It Yourself*

son between the deceased's negligence and the *driver-employee's* negligence—that is, between the negligence of the two drivers of the vehicles actually involved in the collision. It is self-evident that in a case such as this, where the sine qua non of the employer's liability under any theory is the negligence of the employee-driver in the operation of the employer's truck, it is the negligence of the employee-driver which must be compared and not that of the employer. If, as all of our cases hold, there could be no liability on the part of the master-entrustor without proof of actionable negligence against the driver-entrustee, regardless of how negligent the master-entrustor may have been in employing the driver, it must follow as night the day that it is the negligence of the two drivers that is to be compared. Suppose the driver were guilty of slight passive negligence while the plaintiff was guilty of ordinary active negligence, would a recovery be authorized against the master-entrustor? Obviously no more than if the driver had been guilty of no negligence.

---

*System,* 97 Ga. App. 669 (104 SE2d 497); *Medlock v. Barfield,* 90 Ga. App. 759, 761 (84 SE2d 113). In the usual case, however, as in the case at bar, it is proper to speak of the negligence of the driver and to apply the rule that the non-driver defendant cannot be held liable if the driving defendant is not held liable. In agency-entrustment cases where a simple admission of agency might not suffice, for reasons such as those previously suggested, and even in cases proceeding solely on the theory of negligent entrustment, we have no doubt that the ingenuity of counsel will allow them to frame their admissions in such a way as to narrow the inquiry to the occasion in question so that the general exclusionary rules will apply. For case and statutory authority not cited in the opinion exemplifying the exclusionary rules see *Code* § 38-202; *Myrick v. Alexander,* supra; *Central R. & Bkg. Co. v. Roach,* 64 Ga. 635 (5); *Augusta & Summerville R. Co. v. Randall,* 85 Ga. 297 (2) (11 SE 706); *Atlanta Consolidated Street R. Co. v. Bates,* 103 Ga. 333, 349 (6) (30 SE 41); *Smith v. Goodwin,* 103 Ga. App. 248, 249 (3) (119 SE2d 35); *Taylor v. Marsh,* 107 Ga. App. 575, 577 (2) (130 SE2d 770); *Hendrick v. Daniel,* 119 Ga. 358 (2), supra; *Lovell v. Frankum,* 145 Ga. 106 (5), supra; *Bankers Trust &c. Co. v. Hanover Nat. Bank,* 35 Ga. App. 619 (1), supra.

As to punitive damages, that issue is in no way involved in this case in the posture in which it now stands before this court. It is not presented where allegations of the petition present no question of wilfulness, wantonness, malice, oppression, or of conscious indifference to consequences. *Jackson v. Western & A. R. Co.,* 146 Ga. 151 (2) (90 SE 963).

If the suit were against the entrustor alone these problems would not, of course, arise. But determination of the applicability of the rules pertaining to punitive damages, guest passengers, etc., vis-a-vis liability under negligent entrustment, family-purpose, agency or other theories must await the proper occasion. We do well to kill the snakes springing from the pages of the records before us—it is improper and foolhardy to stir up more. Consequently, without dwelling upon the matter we simply direct attention to the holding of this court and of the Supreme Court that *Code* § 105-2011, authorizing apportionment of damages, has no application in personal injury actions. See *Hightower v. Landrum,* 109 Ga. App. 510, 514 (5a) (136 SE2d 425), where the cases are collected. Obviously no punitive damages could be recovered on account of his employment against the employee if he were sued alone, or as principal. Since *Code* § 105-2011 cannot apply, it must follow that unless punitive damages are authorized against both defendants, there can be no recovery of that item. "[W]here several defendants are sued jointly, exemplary damages are not recoverable against any of them unless all are liable therefor" in jurisdictions where there can be no apportionment. 22 AmJur2d 356, Damages, § 262. Compare *Gasway v. Atlanta & W. P. R. Co.,* 58 Ga. 216 (2), holding that the master may be held only "If the tortious acts of the servant or agent be such . . . *as would have subjected the servant to exemplary or vindictive damages* had he been sued as principal. . ."

What we rule here either answers or renders moot the questions raised by Enumerations of error 6 through 29, 34 through 150, and 154 through 163.

■ Prior to the first trial in September, 1965, defendants served upon plaintiff a notice "to produce and to have upon the trial of said case on September 13, 1965, the income tax records

in your possession of you and your deceased husband [sic] . . . for the years 1962, 1963, and 1964 . . . or such of these years as are in your possession, for use as evidence in the trial of said case." This notice was served pursuant to *Code Ch.* 38-8 prior to its repeal by Ga. L. 1966, p. 502. Plaintiff filed a motion to quash on the grounds that "income tax returns are not subject to a notice to produce; that discovery thereof is not required by law, and production thereof is beyond the scope of a notice to produce; and that such returns are privileged, this case not being an action involving the correctness of such returns."

The trial court sustained the motion to quash just prior to the first trial and relieved plaintiff from producing the income tax records of her decedent. After the case resulted in a mistrial and prior to the second trial, *Code Ch.* 38-8, under which the notice to produce was filed, was repealed and new provisions enacted in lieu thereof. Ga. L. 1966, p. 502, § 1 (g); *Code Ann.* § 38-801 (g). Defendants did not serve a new notice to produce or attempt to renew the original one, error being enumerated on the sustaining of the motion to quash prior to the first trial.

Plaintiff contends that no error appears because (a) the notice to produce was limited by its own terms to the first trial, and that trial having resulted in a mistrial and the notice not having been renewed or served again, the ruling became moot, and (b) the ruling was correct as a matter of law.

We do not agree that the ruling was correct. Plaintiff argues that the question is not whether the documents were subject to discovery but whether they would be admissible in evidence and thereby subject to notice to produce. Insofar as an *absolute privilege* is sought to be invoked, however, we can perceive no rational basis for distinguishing between use of the documents for evidence and for discovery under either old *Code Ch.* 38-8, new *Code Ann.* § 38-801 (g) (Ga. L. 1966, p. 502, § 1 (g)), or applicable provisions of the Depositions and Discovery Act, Ga. L. 1959, p. 425 (*Code Ann. Ch.* 38-21); and by the great weight of authority income tax records such as those sought to be produced here are not privileged. See 23 AmJur2d 562, Depositions and Discovery, § 202; 58 AmJur 301, Witnesses, § 536; 27 CJS 232, Discovery, § 72 (d); Annot., Discovery and Inspection of

Income Tax Returns in Actions Between Private Individuals, 70 ALR2d 240; Fed. Rules Civ. Proc. Rule 34, note 46, 28 USCA.

Defendants assert in their brief that the trial court quashed the notice to produce on authority of *E. Frederics, Inc. v. Felton Beauty Supply Co.*, 58 Ga. App. 320 (8) (198 SE 324), which holds: "The judge did not err in refusing to order the production of income tax returns of the defendant, this not being an action involving the correctness of such returns." It is argued that *E. Frederics* is distinguishable on the basis that the income tax returns were not relevant to any issue in that case whereas the earnings of the decedent were a vital and material issue in the present case. We doubt that *E. Frederics* can thus be distinguished, and its holding that income tax returns are subject to a notice to produce only in an action involving the correctness of the returns is overruled. The records were relevant and material to the issue of damages in the present case, and the quashing of the notice to produce was error.

To some extent that case led us into error in *State Hwy. Dept. v. Harrison*, 115 Ga. App. 349, 350 (7) (154 SE2d 723). However, an examination of the record in *Harrison* reveals that it is distinguishable on the facts. The record shows that the notice to produce was filed *during the trial* and attached thereto was an affidavit of the attorney asserting that he "has reason to believe that a copy of the 1964 Tax Returns . . . *called for in the above notice to produce* is or has been in existence and is in the courtroom at this time; that it is in the possession or control of J. E. Harrison, Jr., or of Robert Knox, his attorney, and that it is material to the issues in the above-stated case and he makes this statement in order to render said notice available." Upon examination of Harrison by movant's attorney he stated that an envelope (under discussion and in the courtroom) contained a copy of his Federal and State income tax returns. The court made inquiry of him as to whether he had prepared them himself, and he answered that a Mr. Beddingfield in Augusta prepared them for him. He did not know whether the copies which he had were true and correct copies of the originals, and the court sustained an objection to a requiring of their production.

It is obvious that the ruling was a short cut to the matter of whether, if produced, the returns would be admitted; in any event it was only as to a copy *sought during the course of the trial* from the files of the opposite party, there being some doubt as to whether they were correct copies of the original as called for in the notice. Be that as it may, our ruling in *Harrison* will not be extended, and any intimation in the opinion (particularly Headnote 7) that copies of tax returns are not subject to production under proper notice or that there is a burden on the party seeking production to show correctness of the copies, either for obtaining production or admission in evidence, is specifically overruled.

It is obvious that if a party seeking the production of copies of income tax returns in the other party's possession were in a position to show that the copies were true and correct copies of the originals, production of the copies would not be needed. That requirement would place an impossible burden on the party seeking production and virtually emasculate the notice to produce procedure. Upon production of copies pursuant to a notice to produce, the producing party admits the correctness of the copies and further proof is unnecessary in order for the moving party to introduce them into evidence. If the copies of the returns are not deemed correct in one or more respects by the producing party, the copies should nevertheless be produced and appropriate explanations or protective orders made or entered. Nearly everyone who has income is required by law to make correct returns showing his income for the particular year and its source or sources. It is presumed that all men perform the duties required of them by law (*Clements v. Hollingsworth,* 205 Ga. 153 (5) (52 SE2d 465)), and this affords a presumption of correctness as to the copy produced under notice. And compare *Code* § 38-705; *Campbell v. Roberts,* 66 Ga. 733. Admission of the copy into evidence, however, does not preclude a showing of other items which may have been omitted from the return by oversight, mistake or otherwise, or of items which, being exempt or non-taxable, are not required to appear in the return, if relevant to the matter at issue. In the event the party upon whom the notice is served asserts that he has no copies of

the returns in his possession, "since it is within the power of the taxpayer to obtain a copy of his income tax return the court may order him to do so, or to sign a form which in effect designates the attorney for the moving party as an agent to obtain a copy of the income tax return." Annot., 70 ALR2d 240, 252, § 7, supra.

The fact that the decedent is not a party to the case and that plaintiff sues not as his personal representative but as the statutory beneficiary of a wrongful death claim does not prevent the production of the records. In Connor v. Gilmore, 45 Del. 184 (70 A2d 262), it was held that if plaintiff widow "would seek the processes of this Court to recover substantial damages for [her husband's] death, she should be compelled to comply with reasonable demands by opposing parties for inspection for the purposes of discovery" and that she would be required to make a bona fide demand on the proper authorities for income tax returns not in her actual possession. Nor does the fact that the tax returns were made jointly by plaintiff and her decedent require a different result. Constantine v. Constantine, 274 Ala. 374 (149 S2d 262). And see Rabun v. Wynn, 209 Ga. 80 (4) (70 SE2d 745); Wills v. Wills, 215 Ga. 556, 558 (6) (111 SE2d 355).

Did the erroneous ruling become moot because the notice to produce was addressed to, and was quashed before, the first trial and was not renewed or served again after that trial resulted in a mistrial? We think not. "A notice to produce is not defective in that it does not specifically call for the production of the paper from 'term to term,' and the party served therewith is not relieved from compliance with the notice because the trial occurs at a term subsequent to the term at which such party was notified to produce the paper." Carrington v. Brooks, 121 Ga. 250 (1b) (48 SE 970). Refusal of the trial court to grant an order requiring production after failure of response to the notice to produce is reversible error requiring a new trial. Carrington v. Brooks, 121 Ga. 250, supra. The error is not cured simply because the jury were not able to reach a verdict on the first trial and a second trial was necessary. In these circumstances the case was still pending (cf. Oliveros v. State, 118 Ga. 776 (2) (45 SE 596); Wade v. Penn, 88 Ga. App. 20 (1) (75

SE2d 845); and see *Rider v. State,* 103 Ga. App. 184 (118 SE2d 749)), and the notice to produce would have continued automatically from term to term until a final disposition of the case had the notice not been quashed. Moreover, since the notice to produce was quashed on the grounds that as a matter of law the records were not subject to such a notice, any effort to renew the notice or to serve it again under the circumstances here would have been futile and was unnecessary, and failure to renew or re-serve is not fatal to preserving the error. The law does not require the doing of a vain or useless thing. *Irvin v. Locke,* 200 Ga. 675, 679 (38 SE2d 289); *Finney v. Blalock,* 206 Ga. 655, 660 (3) (58 SE2d 429); *Johnson v. State,* 215 Ga. 839 (5) (114 SE2d 35); *Manor v. State,* 223 Ga. 594 (3) (157 SE2d 431); *Ray v. Cobb County Bd. of Educ.,* 110 Ga. App. 258, 264 (138 SE2d 392); *Hill v. General Rediscount Corp.,* 116 Ga. App. 459, 463 (157 SE2d 888).

Enumeration of error 1 is meritorious.

■ Enumeration of error 30 was expressly abandoned.

■ Enumerations of error 31 through 33 complain of the overruling of motions for postponement and mistrial on grounds that plaintiff had failed to list the names of certain witnesses in response to interrogatories. Since the names of the witnesses are now known and we reverse for reasons set forth in Divisions 5 and 6, these enumerations of error are not considered. *City of Jefferson v. Maddox,* 116 Ga. App. 51 (2) (156 SE2d 553).

■ The treatment in defendants' brief with respect to Enumerations of error 151 through 153 is nothing more than a reiteration of the enumerations unsupported by citation of authority or argument as required by Rule 17 (c) (2) of this court and must be deemed abandoned in accordance with its provisions. *Code* § 24-106; *Crider v. State of Ga.,* 115 Ga. App. 347 (154 SE2d 743).

■ Enumerations of error 164 through 166 complain of certain charges of the court and refusal to charge certain of defendants' written requests. Since a determination of the questions presented by these enumerations requires a consideration of the evidence to ascertain error, and since neither the evidence nor the charge is likely to be the same upon another trial, these

enumerations are not considered. *City of Jefferson v. Maddox,* 116 Ga. App. 51 (2), supra.

■ Enumeration of error 167 complains of the introduction into evidence of plaintiff's Exhibit Number 11, which was admitted without objection because of the belief of counsel for all parties that it was a copy of the Carlisle Mortality Table. The exhibit in fact was an annuity table with markings under the age of 54 years, whereas the deceased was 65 at the date of death. The complaint is that the exhibit, coupled with the charge of the court, probably led the jury to multiply improperly the gross earnings of the deceased by the figure underlined in the annuity table to arrive at the amount of the verdict. Since the verdict cannot stand for reasons set forth in Divisions 5 and 6, we do not consider this enumeration or enumeration 168, complaining of the excessiveness of the verdict. *City of Jefferson v. Maddox,* 116 Ga. App. 51 (2), supra.

■ Enumerations of error 169 through 172 complain of the ex parte admissions of certain affidavits for the trial judge's consideration of the motion for new trial. Since we reverse on other grounds and the questions here raised are not likely to come up again, these enumerations are not considered. *City of Jefferson v. Maddox,* 116 Ga. App. 51 (2), supra.

*Judgment reversed. Jordan, P. J., Pannell, Deen, Quillian and Whitman, JJ., concur. Felton, C. J., Bell, P. J., and Hall, J., concur save as to Division 5 of the opinion, as to which they dissent.*

HALL, Judge, dissenting to Division 5. For the past one hundred and ninety years, a plaintiff has been the master of his lawsuit in the State of Georgia. During this period of time the plaintiff rather than the tortfeasor determined what theory or theories the plaintiff was entitled to pursue in seeking to recover damages for tort. But alas, under the majority opinion all this has been changed. A new day has dawned for tortfeasors in Georgia. This court has now elevated the status of a tortfeasor to the degree that he has standing to decide upon what theory of tort he prefers to be tried.

The majority opinion concedes that on this specific point outside authorities are in conflict. In fact there are only a handful

of states that have considered the question. Nevertheless the majority opinion creates an illusion of a so-called "weight of authority" by engaging in verbose and prolix quotations, i.e., quoting page after page from these few cases—even quoting the dissents of opposing authorities. The answer to this case must be found from the exercise of our own independent judgment in accordance with the clear public policy of this State and the law already established.

■ The majority opinion recognizes that the doctrine of respondeat superior, making the master liable for the tort of his servant in the scope of his employment, is the law of Georgia, and that the entrustment of a vehicle to a person known to have reckless driving propensities is an independent tort of the entrustor or employer.

Thus the law creates two distinct duties of the defendant to the public—one his duty as an employer to answer for the wrong done by his employees in pursuing his business—the other the duty of every person, including employers, not to entrust a vehicle to a reckless person making it likely that someone will be injured. *Savannah Electric Co. v. Wheeler,* 128 Ga. 550 (58 SE 38, 10 LRA (NS) 1176); *Estridge v. Hanna,* 54 Ga. App. 817 (189 SE 364); *NuGrape Bottling Co. v. Knott,* 47 Ga. App. 539 (171 SE 151); *Christian v. Columbus & Rome R. Co.,* 79 Ga. 460 (7 SE 216); *Medlock v. Barfield,* 90 Ga. App. 759 (84 SE2d 113); *Gay v. Healan,* 88 Ga. App. 533, 537 (77 SE2d 47). With respect to the first duty, the employer's tort liability is indirect, or vicarious; with respect to the second duty his tort liability is direct. With respect to the first, the employer is jointly liable with the wrongdoing employee; with respect to the second, whether he is liable severally or jointly depends upon whether his independent negligence concurs with the employee's negligent driving. With respect to the second, a corporation or individual might in the short run reduce its expenses since incompetent drivers could be procured for less money than competent drivers. Nevertheless, during the time the employer is knowingly entrusting a vehicle to a reckless driver, he is continually breaching the duty not to do so and is continually negligent. At the moment the driver's reckless propensity operates

to cause injury to someone, the employer's negligent entrustment is present and is a cause of the injury. But for this breach of duty by the employer, the injury would not have occurred. 2 Harper & James, The Law of Torts 1110, § 20.2. This negligence of the employer cannot but concur in time and causal relation to the injury with the negligent act of the driver contributing to cause the injury.

When, as in this case, the employer's independent act is knowing entrustment of a vehicle to a reckless driver, the evidence showing the driver's recklessness and the employer's knowledge thereof cannot be *legally prejudicial* to the employer, because it constitutes proof relevant to the issue of negligent entrustment. That it might be inflammatory is, therefore, no reason to exclude it. *Avery v. State,* 209 Ga. 116, 126 (70 SE2d 716). And it cannot be legally prejudicial to either the driver or the employer on the issue of the driver's negligence because the court would instruct the jury that this evidence is relevant to and should be considered only on the issue of negligent entrustment, as the court did in this case. We must presume that the jury pays attention to and correctly applies all of the charge. *Stanley v. Squadrito,* 107 Ga. App. 651, 658 (131 SE2d 227).

The law has created both duties of the employer to the plaintiff—respondeat superior (to answer for the acts of his employee) and the duty himself not to entrust a vehicle to a reckless driver—with the correlative rights of the public to enforce those duties by actions for damages. These are concomitant *rights*—and not alternative ones as the majority opinion makes them, and the law does not require the plaintiff to choose between the two. What standing does the employer defendant have in this case to demand that evidence that is relevant and not legally prejudicial cannot be admitted against him because he would rather be liable for his employee's breach of duty to the public than to be liable for his own breach of duty? The principle is well stated in 8 AmJur2d 127, § 573: The employer's liability does not "rest upon imputed negligence or upon ownership or agency; it rests upon the *combined negligence* of the owner and the driver—negligence of the owner in entrusting the vehicle to an incompetent driver, and negligence of the driver

in its operation. However, where the circumstances warrant, one injured by the negligent operator of a motor vehicle driven by one other than the owner may seek recovery from the owner both upon the theory of respondeat superior and upon the theory that the owner knowingly entrusted the operation of his motor vehicle to an incompetent driver. *The admission of agency in such a case does not banish the theory that the owner knowingly entrusted the operation of his motor vehicle to an incompetent driver."* (Emphasis supplied.)

The defendant entrustor attempts to equate the present case to a hypothetical situation where the suit has been predicated upon negligent entrustment alone and the employer admits all elements of proof except negligence of the employee and its causal relation to the injury. This will not wash. In that type of case the admission by the owner of entrustment to an incompetent driver would be an admission of *its own negligence* and thereby prove the truth of that issue. The jury would have before it this admission (evidence of the owner's negligence) and then resolve the issue of the driver's negligence in determining whether his known propensity for recklessness operated to make the employer's negligence and the driver's negligence combine and concur to cause the injury.

The defendant entrustor further contended in this case that the plaintiff's deceased husband was negligent and by his own negligence caused or contributed to his death. Thus the defendant asserted and put before the jury the issue of camparison of the deceased's alleged negligent conduct with the negligence for which the defendant was alleged to be responsible. This issue appears in the defendant's pleadings, the defendant's requests to charge, and the court's charge. Nevertheless, the majority opinion holds that the entrustor's negligence cannot be compared, i.e., this tortfeasor is some sort of privileged character who is insulated from comparison. Must we prohibit the jury from considering the defendant's alleged concurrent negligence in employing and retaining a reckless driver when they compare the deceased's alleged negligence with that of the defendants in determining the cause or causes of the deceased's death? Does public policy require that such a negligent de-

fendant be given the option of selecting for comparison with the plaintiff's negligence the least distasteful act of negligence for which he is responsible, or that the court set up a protective screen to keep out legal evidence of the defendant's breach of duty to the public not to entrust a vehicle to a reckless person?

The same reasoning applies to the question of aggravated damages under *Code* § 105-2002. At the time of the motion for summary judgment, the possibility existed that the question of aggravated damages could be in the case. "In order for the jury to assess punitive damages in an action for a tort, it is not necessary that they shall be claimed eo nomine in the declaration." *Savannah F. & W. R. Co. v. Holland,* 82 Ga. 257 (4) (10 SE 200, 14 ASR 158); *Macon R. &c. Co. v. Mason,* 123 Ga. 773 (2) (51 SE 569).

The majority opinion attempts to explain this away by citing cases that relate to *Code* § 105-2011 and deal with compensatory damages. They are inapplicable to *Code* § 105-2002. "In a negligence case recovery of aggravated damages may be authorized when the circumstances of the tort are such as to evince an entire want of care and indifference to consequences. Wilful and intentional misconduct is not essential." 8 Encyclopedia of Georgia Law 72, Damages, § 49. This principle has been applied to the operation of a motor vehicle in Georgia. *Jackson v. Co-op Cab Co.,* 102 Ga. App. 688 (3) (117 SE2d 627); *City Ice Delivery Co. v. Turley,* 44 Ga. App. 32 (1) (160 SE 517). It is applicable to an allegation of entrusting an automobile to an incompetent driver. Goff v. Lubbock Bldg. Products (Tex. Civ. App.), 267 SW2d 201; 62 ALR2d 813, § 8.

In summary, the defendant entrustor desires to insulate itself from the jury's consideration of the question of its own negligence and merely offers to respond in damages (respondeat superior) for any negligence of its driver. It is asking the court for judicial immunity for its own act of negligence. Unfortunately a majority of this court has swallowed this theory hook, line and sinker. Such a holding subverts the public policy of this State that employers should exercise ordinary care in the hiring of drivers that they put upon the highways of this State.

In my opinion, the negligent corporate entrustor has employed

the fiddler and danced to his tune. It should now have to hear it played back to the jury regardless of how unpleasant the sound of the music.

■ The opinion further holds that the duplicity demurrer was good; the employee's negligence for which the employer is liable under respondeat superior and the employer's negligent entrustment should have been pleaded in separate counts. We are presented with no authority that would prohibit a plaintiff bringing a joint action against an employer and an employee for independent concurrent acts of ordinary negligence, despite the fact that the employer would be liable directly for his own act and also liable indirectly for the employee's act. Decided cases, in fact, indicate a contrary rule. *Savannah Electric Co. v. Wheeler,* 128 Ga. 550 (53 SE 38) (first count of petition alleged as bases of liability negligence in employing a reckless conductor and negligence of conductor imputable to employer); *Gooch v. Georgia Marble Co.,* 151 Ga. 462 (107 SE 47); *Albany Coca-Cola Bottling Co. v. Shiver,* 63 Ga. App. 755 (12 SE2d 114); *Gay v. Healan,* 88 Ga. App. 533, 539, supra; *Akin v. Randolph Motors, Inc.,* 95 Ga. App. 841, 846 (99 SE2d 358). See also, *Saliba v. Saliba,* 201 Ga. 577, 582 (40 SE2d 511).

Felton, C. J., and Bell, P. J., concur in this dissent.

### CORRECTIONS.

Page 461, line 4 from top change "plaintiff appeals" to read: "defendants appeal."

Page 495, line 8 from bottom change "per unit unless a deduction" to read: "per unit less a deduction."